**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| DAVID TOURGEMAN, *Plaintiff-Appellant*, <br><br> v. <br><br> NELSON & KENNARD, a partnership, *Defendant-Appellee*, <br><br> and <br><br> COLLINS FINANCIAL SERVICES, INC., DBA Precision Recovery Analytics, Inc., a Texas corporation; COLLINS FINANCIAL SERVICES USA, INC.; PARAGON WAY, INC.; DELL FINANCIAL SERVICES, LP, *Defendants.* | No. 16-56190 <br><br> D.C. No. 3:08-cv-01392-CAB-NLS <br><br><br> OPINION |

Appeal from the United States District Court
for the Southern District of California
Cathy Ann Bencivengo, District Judge, Presiding

Argued and Submitted June 7, 2018
Pasadena, California

Filed August 20, 2018

Before:  Richard C. Tallman and Jacqueline H. Nguyen, Circuit Judges, and Mark W. Bennett,[*] District Judge.

Opinion by Judge Tallman

---

## SUMMARY[**]

---

### Fair Debt Collection Practices Act

The panel affirmed the district court's dismissal of a consumer class action under the Fair Debt Collection Practices Act.

The FDCPA provides for class statutory damages "not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector."  The panel held that the plaintiff bears the burden of introducing evidence at trial to establish the debt collector's net worth because such evidence is essential to an award of class statutory damages.

The panel addressed other issues in a concurrently-filed memorandum disposition.

---

[*] The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Brett M. Weaver (argued), San Diego, California; Daniel P. Murphy, San Diego, California; for Plaintiff-Appellant.

Tomio Buck Narita (argued) and Jeffrey A. Topor, Simmonds & Narita LLP, San Francisco, California, for Defendant-Appellee.

## OPINION

TALLMAN, Circuit Judge:

David Tourgeman appeals the dismissal of his consumer class action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* The FDCPA provides for class statutory damages "not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector[.]" § 1692k(a)(2)(B). The statute is silent as to which party bears the burden of introducing evidence at trial to establish the debt collector's net worth. Tourgeman appeals the district court's conclusion that he bore this burden. Because the FDCPA makes evidence of the defendant's net worth essential to an award of class statutory damages, we agree with the district court and affirm.[1]

---

[1] This opinion addresses only Tourgeman's claim that the district court misallocated the burden of proof. We resolve the remaining claims in a memorandum disposition filed concurrently with this opinion.

I

Tourgeman financed the purchase of a Dell computer through a loan agreement.[2] Dell Financial Services arranged for and serviced the loan, which originated with CIT Online Bank. After Tourgeman's account allegedly became delinquent, Dell Financial Services charged off and sold the purported debt to Collins Financial Services. Paragon Way, Inc., Collins's affiliated debt-collection company, sent several letters encouraging Tourgeman to pay the alleged debt. Collins then referred Tourgeman's file to the law firm of Nelson & Kennard, which sent Tourgeman another collection letter. All of these letters identified the original creditor as American Investment Bank, rather than CIT Online Bank. When Tourgeman did not respond to Nelson & Kennard's letter, the law firm filed a collection complaint against Tourgeman in state court. The state court complaint, like the collection letters, misidentified Tourgeman's original creditor as American Investment Bank. Tourgeman responded to the complaint by retaining counsel. Nelson & Kennard ultimately dismissed the lawsuit.

Tourgeman brought suit against Nelson & Kennard and other entities allegedly involved in collecting his disputed debt.[3] He claimed that the letters and complaint violated the

---

[2] We recount only the facts relevant to the issue before us. The factual background of Tourgeman's case is discussed in more detail in our previous opinion. *See Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1112–14 (9th Cir. 2014).

[3] Collins Financial Services, Inc., Collins Financial Services USA, Inc., and Paragon Way, Inc. defaulted before the district court and did not file briefs or offer argument in this appeal. Tourgeman settled with Dell Financial Services. This opinion therefore refers only to Defendant Nelson & Kennard.

FDCPA by using "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The court later certified a class of consumer plaintiffs.

The district court dismissed Tourgeman's lawsuit on summary judgment, but we reversed and remanded. *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1125 (9th Cir. 2014). We held that the misidentifications were material under the FDCPA as a matter of law, subjecting Nelson & Kennard to strict liability. *Id.* at 1118, 1123–24. On remand, the district court dismissed Tourgeman's letter-based claims on standing grounds, allowing only his complaint-based claim to proceed to trial. The focus at trial was to be evidence supporting the class award of statutory damages and Nelson & Kennard's bona fide error defense.[4]

In response to the parties' pretrial motions *in limine* to exclude evidence and argument regarding net worth, the district court instructed the parties to address a related issue: which party would carry the burden at trial of introducing evidence regarding Defendant's net worth. The district court ultimately held that Tourgeman carried this burden. Because Tourgeman lacked competent evidence of Nelson & Kennard's net worth, the district court dismissed his complaint-based class claim. Tourgeman moved to dismiss his remaining individual claim with prejudice. The district court granted the motion, and Tourgeman timely appealed.

---

[4] The district court had denied Nelson & Kennard's motion for summary judgment, rejecting Defendant's argument that the class could not recover statutory damages as a matter of law.

## II

We have jurisdiction under 28 U.S.C. § 1291. Whether the district court properly allocated the burden of proof is a conclusion of law reviewed de novo. *Molski v. Foley Estates Vineyard & Winery, LLC*, 531 F.3d 1043, 1046 (9th Cir. 2008). We review the district court's interpretation of the FDCPA de novo. *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1024 (9th Cir. 2012).

## III

Tourgeman argues the district court misallocated the burden of proof as to Nelson & Kennard's net worth. We disagree. In light of the statutory text and structure, we conclude that Congress intended the plaintiff to carry the burden at trial of introducing evidence of the defendant's net worth.[5]

## A

Section 1692k of the FDCPA imposes civil liability against "any debt collector who fails to comply with any provision of this subchapter with respect to any person[.]" § 1692k(a). Class members are entitled to "additional," or statutory damages.[6] § 1692k(a)(2). The statute provides a

---

[5] The term "burden of proof" historically included both the "burden of production" and the "burden of persuasion." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005). This appeal concerns the burden of production—Tourgeman's initial obligation to come forward with evidence of Nelson & Kennard's net worth. *See id.* When we discuss the "burden of proof" in this opinion, we are referring to the burden of production at trial.

[6] Section 1692k also provides for actual damages, as well as statutory damages for the plaintiff in an individual action or named

two-step determination for awarding statutory damages to class members, excluding named plaintiffs. *See* § 1692k(a)–(b). First, the factfinder determines the damages ceiling: a class may recover statutory damages "not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector[.]" § 1692k(a)(2)(B). Within that range, the exact amount of damages is determined based on various non-exhaustive factors, including:

> the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional.

§ 1692k(b)(2). The damages provision is silent as to which party carries the burden of producing evidence at trial of the defendant's net worth. *See* § 1692k.[7]

The parties agree that one percent of Nelson & Kennard's net worth is less than $500,000. Accordingly, the limit on statutory damages available to the class must be one percent of Nelson & Kennard's net worth. Tourgeman

---

plaintiff in a class action. *See* § 1692k(a)(1), (2)(A)–(B). Tourgeman does not seek actual damages for himself or the class, and he dismissed his individual complaint-based claim with prejudice.

[7] Although § 1692k refers to "the court," it "has been frequently determined that the word 'court,' used in the [FDCPA] and in the remedial portions of numerous other statutes, encompasses trial by both judge and jury rather than by judge alone." *Kobs v. Arrow Serv. Bureau, Inc.*, 134 F.3d 893, 896–97 (7th Cir. 1998) (quoting *Sibley v. Fulton DeKalb Collection Serv.*, 677 F.2d 830, 832 (11th Cir. 1982)).

conceded below that he could not produce any competent evidence of this amount at trial. He asserts, however, that Nelson & Kennard should have carried the burden of introducing evidence of its own net worth.

## B

It is "one of the most basic propositions of law . . . that the plaintiff bears the burden of proving his case, including the amount of damages." *Faria v. M/V Louise*, 945 F.2d 1142, 1143 (9th Cir. 1991) (citation omitted); *see also Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005) ("Perhaps the broadest and most accepted idea is that the person who seeks court action should justify the request, which means that the plaintiffs bear the burdens on the elements in their claims." (quoting C. Mueller & L. Kirkpatrick, *Evidence* § 3.1, p. 104 (3d ed. 2003))). This is because the party who "seeks to change the present state of affairs . . . naturally should be expected to bear the risk of failure of proof or persuasion." *Schaffer*, 546 U.S. at 56 (quoting 2 J. Strong, *McCormick on Evidence* § 337, p. 412 (5th ed. 1999)).

This fundamental rule is not without exceptions. For example, "certain elements of a plaintiff's claim may be shifted to defendants, when such elements can fairly be characterized as affirmative defenses or exemptions." *Id.* at 57 (citation omitted); *see also FTC v. Morton Salt Co.*, 334 U.S. 37, 44–45 (1948) ("[T]he burden of proving justification or exemption under a special exception to the prohibitions of a statute generally rests on one who claims its benefits[.]"). But where the plain text of the statute is silent as to which party carries the burden of proof, as is the case here, we "begin with the ordinary default rule that plaintiffs bear the risk of failing to prove their claims." *Schaffer*, 546 U.S. at 56 (citations omitted). "Absent some

reason to believe that Congress intended otherwise, therefore, we will conclude that the burden of [proof] lies where it usually falls, upon the party seeking relief." *Id.* at 57–58.

1

When allocating the burden of proof, "the touchstone of our inquiry is, of course, the statute." *Id.* at 56. We first consider the text of the FDCPA. *See Bros. v. First Leasing*, 724 F.2d 789, 792 (9th Cir. 1984) ("In construing a statute in a case of first impression, [we] look to the traditional signposts for statutory interpretation: first, the language of the statute itself[.]" (citation and internal quotations omitted)); *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175–76 (2009) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." (citation and internal quotations omitted)).

Section 1692k limits statutory damages for the class to "*the lesser of*" $500,000 or one percent of the defendant's net worth. § 1692k(a)(2)(B) (emphasis added). Congress's use of "the lesser of" is key because it *requires* the factfinder to determine the defendant's net worth in calculating statutory damages. In other words, Congress made evidence of the defendant's net worth a prerequisite to establishing statutory damages. *Sanders v. Jackson*, 209 F.3d 998, 999 (7th Cir. 2000) ("The FDCPA makes class action damages dependent upon the 'net worth' of the defendant.").

If Congress had intended to depart from the default rule and make net worth an affirmative defense or exemption, *Schaffer*, 546 U.S. at 57, it could have limited liability to $500,000 *unless* the defendant could establish that one

percent of its net worth is less than that amount.  *See Evankavitch v. Green Tree Servicing, LLC*, 793 F.3d 355, 362 (3d Cir. 2015) (reasoning that use of "unless" in another section of the FDCPA, 15 U.S.C. § 1692b(3), was "telltale language . . . indicative of an affirmative defense" (citing *United States v. Franchi-Forlando,* 838 F.2d 585, 591 (1st Cir. 1988) (Breyer, J.))).  It did not do so.

Instead, Congress made evidence of the defendant's net worth essential to establishing the statutory damages cap. This case is therefore distinguishable from *Kemezy v. Peters*, 79 F.3d 33 (7th Cir. 1996), a case on which Tourgeman relies heavily.  There, the Seventh Circuit placed the burden on the defendant to introduce evidence of its own wealth, but emphasized that such evidence is unnecessary to determine a punitive damages award under 42 U.S.C. § 1983.  *Id.* at 34–36 ("The question is whether [plaintiffs seeking punitive damages] *must* present [evidence of the defendant's wealth.] . . .  The answer, obviously, is no."); *see also Provost v. City of Newburgh*, 262 F.3d 146, 163 (2d Cir. 2001) ("The duty then is on the defendant to present evidence . . . of his limited resources *if he wishes* that factor to be weighed in the calculation of punitive damages." (emphasis added) (citations omitted)); *cf. Tri-Tron Int'l v. Velto*, 525 F.2d 432, 438 (9th Cir. 1975) (declining to interfere with a punitive damages award where the defendants proffered no evidence of their financial ability to pay); *El Ranco, Inc. v. First Nat'l Bank of Nev.*, 406 F.2d 1205, 1218–19 (9th Cir. 1968) (same).  Under the FDCPA, by contrast, evidence of the defendant's net worth is not optional; the plain language of the statute requires it if plaintiffs are to recover anything on their claims.  Because evidence of net worth is crucial to establish the class's entitlement to statutory damages, the burden of production at trial is properly placed on the plaintiff.

2

The structure of § 1692k further supports our conclusion that Congress did not intend to shift the burden of production to the debt collector.

a

The FDCPA provides a dual-step formula for calculating class statutory damages. The factfinder first determines the defendant's maximum liability. § 1692k(a)(2)(B). It next "determin[es] the amount of liability in any action *under subsection (a)*" based on a non-exhaustive list of factors. § 1692k(b) (emphasis added). The factfinder thus determines the appropriate award of statutory damages within the permissible range first established under subsection (a).

Tourgeman urges us to adopt a different interpretation. He contends that the factfinder can simply skip the cap analysis in subsection (a) and proceed directly to the list of factors in subsection (b), on which he concedes he carries the burden of proof. Under Tourgeman's theory, the factfinder may award any amount, which the debt collector can subsequently attempt to limit based on evidence of its net worth. Beyond ignoring the plain language of § 1692k(a)(2)(B), discussed above, Tourgeman would have us simply overlook the analysis Congress enacted for calculating entitlement to damages. This we decline to do. *See Gonzales v. Oregon*, 546 U.S. 243, 273 (2006) ("[S]tatutes should not be read as a series of unrelated and isolated provisions." (citation and internal quotations omitted)); *In re Cardelucci*, 285 F.3d 1231, 1234 (9th Cir. 2002) ("This Court assume[s] that Congress carefully select[s] and intentionally adopt[s] the language used in a statute." (alterations in original) (citation and internal

quotations omitted)).  Before the factfinder can apply the list of factors, plaintiffs must first produce evidence from which the factfinder can determine the limit on statutory damages.

This preliminary showing of net worth distinguishes the FDCPA from the statutory scheme in *Hernandez-Miranda v. Empresas Diaz Masso, Inc.*, 651 F.3d 167 (1st Cir. 2011). There, the First Circuit held that the defendant in a Title VII employment discrimination action carried the burden of proving caps on damages.  *Id.* at 175–76.  But, unlike the damages cap under the FDCPA, the caps under Title VII "come into to play *only after* there has been a verdict award," and "the defendant employer must affirmatively move to impose the cap and to present relevant evidence." *Id.* at 173, 176 (emphasis added) (citing *Schaffer*, 546 U.S. at 57). Moreover, Title VII explicitly "forbids the court from informing the jury of the limitations on recovery," which "are for the court, not the jury, to apply." *Id.* at 173 (citations omitted).  This "ensure[s] that no pressure . . . will be exerted on the amount of jury awards by the existence of the statutory limitations." *Id.* (citation and internal quotations omitted).  In contrast, the FDCPA's damages cap comes into play first when the plaintiff is seeking statutory damages, and is determined by the factfinder as part of plaintiff's case in chief.  *Hernandez-Miranda* is inapposite.

b

The two exceptions to liability that *are* delineated in § 1692k provide additional support for applying the default rule.  *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 587–88 (2010) ("In reading a statute we must not look merely to a particular clause, but consider in connection with it the whole statute" (citation and internal quotations omitted)).  The Supreme Court has observed that the FDCPA "contains two exceptions to

provisions imposing liability on debt collectors." *Id.* at 578. Neither involves evidence of net worth.

The first exception is the bona fide error defense:

> [a] debt collector may not be held liable . . . *if [it] shows by a preponderance of the evidence* that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

§ 1692k(c) (emphasis added); *see Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1271 (11th Cir. 2011) ("This bona fide error defense in § 1692k(c) is an affirmative defense, for which the debt collector has the burden of proof."); H. Rep. 94-1202, 94 Cong., 2d Sess. 11 (1976) ("Subsection (c) . . . provides an exemption from liability[.]"). Section 1692k(c) "explicitly places the burden on the debt collector to prove that it acted unintentionally and had procedures in place to avoid such an error." *Evankavitch*, 793 F.3d at 363 (citation omitted). The second exception provides a safe harbor from liability where the defendant can show it complied with an advisory opinion by the Consumer Financial Protection Bureau. § 1692k(e) ("No provision of this section imposing any liability shall apply to any act done or omitted in good faith in conformity with any advisory opinion of the Bureau[.]").

The Third Circuit has explained that §§ 1692k(c) and 1692k(e) are "delineated as affirmative defenses by § 1692k(a)'s general statement that a debt collector shall be held liable 'except as otherwise provided by this section,' with the particular affirmative defenses described in separate subsections." *Evankavitch*, 793 F.3d at 363 (quoting

§ 1692k(a)).    Placing "the exception and the general prohibition in different parts of the statute," our sister circuit explained, "has been recognized by the Supreme Court as indicative of an affirmative defense." *Id.* (citing *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 87, 91 (2008)).

Sections 1692k(c) and 1692k(e) inform our view that Congress knew how to shift the burden of proof to the defendant, but chose not to do so regarding evidence of net worth. *See Camacho v. Bridgeport Fin. Inc.*, 430 F.3d 1078, 1081 (9th Cir. 2005) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983))).  We have also acknowledged the "effort by Congress in drafting the FDCPA to be both explicit and comprehensive, in order to limit the opportunities for debt collectors to evade the under-lying legislative intention." *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1178 (9th Cir. 2006) (citation and internal quotations omitted).

This is "the backdrop against which the Congress writes laws, and we respect it unless we have compelling reasons to think that Congress meant to put the burden of [proof] on the other side." *Meacham*, 554 U.S. at 91–92 (citing *Schaffer*, 546 U.S. at 57–58).  Here, we see no reason to depart from the default rule.  The statute—its text and structure—makes evidence of net worth essential to a class statutory damages award; it is not an affirmative defense.  If a plaintiff seeks class statutory damages, it carries the burden of introducing such evidence at trial.

3

Tourgeman argues that Nelson & Kennard must bear the burden on this issue because it has superior access to the relevant evidence. We disagree. No rule of statutory construction or evidence compels that result.

The Supreme Court has acknowledged the general principle that a litigant ordinarily does not carry the burden of "establishing facts peculiarly within the knowledge of his adversary." *Schaffer*, 546 U.S. at 60 (citations and internal quotations omitted); *see also Dixon v. United States*, 548 U.S. 1, 9 (2006). But the Court has also cautioned that "this rule is far from . . . universal," and "[v]ery often one must plead and prove matters as to which his adversary has superior access to the proof." *Schaffer*, 546 U.S. at 60 (citations and internal quotations omitted). Access to evidence, while perhaps a consideration, is far from determinative.

We also note that it is not uniquely difficult for consumer plaintiffs to acquire the debt collector's financial information. *Compare Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, & Stevens, P.A.*, 525 F.3d 1107, 1114 (11th Cir. 2008) (declining to apply the "superior access" rule because "proper use of discovery tools, such as interrogatories, requests for admissions, and depositions, will reveal which enumerations may apply," and thus the plaintiff will not be unfairly surprised at trial), *with Evankavitch*, 793 F.3d at 365–66 (emphasizing the difficulty of acquiring, as an FDCPA plaintiff, information about the purpose and basis of the debt collector's phone calls to third parties given a lack of records).

Here, Tourgeman had every opportunity to acquire evidence of Nelson & Kennard's net worth. A protective

order was entered to give Tourgeman access to Defendant's financial information, and Nelson & Kennard was ordered to produce it.  Tourgeman obtained hundreds of pages of bank statements, copies of checks, tax returns, and deposition testimony regarding Defendant's financial condition.[8] FDCPA plaintiffs seeking evidence of net worth "are not peculiarly at a disadvantage in the discovery of necessary facts[.]" *Thomas*, 525 F.3d at 1114.

Tourgeman also argues that placing the burden on the plaintiff would increase litigation costs, make discovery battles inevitable, and generally discourage class actions under the FDCPA.  But "[w]hatever merits these and other policy arguments may have, it is not the province of this Court to rewrite the statute to accommodate them." *Artuz v. Bennett*, 531 U.S. 4, 10 (2000) (per curiam); *see also Correia v. C.I.R.*, 58 F.3d 468, 469 (9th Cir. 1995) ("Although [plaintiffs] put forth what may be a legitimate policy rationale[,] . . . it is for Congress, not the courts, to make such a change." (citation omitted)).  We think the statute is clear, and our inquiry ends there.

IV

We conclude, based on the text and structure of § 1692k, that Congress intended the "ordinary default rule" to apply. *Schaffer*, 546 U.S. at 57.  We hold that the plaintiff carries the burden of producing evidence at trial of the debt

---

[8] The district court concluded that Tourgeman lacked competent evidence because he had no expert to interpret this financial information for the jury—for example, whether to value distributions to the partner as a liability.  Because Tourgeman only challenges how the district court allocated the burden of proof, we need not address what evidence a plaintiff must produce to satisfy its initial burden of production at trial.

collector's net worth to establish entitlement to class statutory damages under the FDCPA.

Costs are awarded to the Appellee. *See* Fed. R. App. P. 39(a)(2).

**AFFIRMED.**